## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
### STATE OF MISSOURI

| | |
|---|---|
| VERONICA O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. _/6-22 - CC01992_ |
| | ) |
| THE ST. LOUIS PUBLIC SCHOOLS | ) Division No. |
| DISTRICT, | ) |
| Serve: Dr. Kelvin Adams | ) |
| 801 N. 11th St. | ) |
| St. Louis, MO 63101 | ) |
| | ) |
| SPECIAL ADMINISTRATIVE BOARD | ) |
| OF THE ST. LOUIS PUBLIC SCHOOLS | ) |
| DISTRICT, | ) |
| Serve: Rick Sullivan | ) |
| 801 N. 11th St. | ) |
| St. Louis, MO 63101 | ) |
| | ) |
| RICK SULLIVAN, MELANIE ADAMS, | ) |
| and RICHARD K. GAINES, individually | ) |
| and in their official capacities as the | ) |
| Special Administrative Board of the St. | ) |
| Louis Public Schools District, | ) |
| Serve each at: 801 N. 11th St. | ) |
| St. Louis, MO 63101 | ) |
| | ) |
| Defendants. | ) |

## PETITION FOR DECLARATORY JUDGMENT
## AND FOR DAMAGES

### FACTS COMMON TO ALL COUNTS

COMES NOW Plaintiff, by and through counsel, and for her Petition, states as

follows:

1.      Plaintiff, Veronica O'Brien (hereinafter "O'Brien"), is a resident of the

City of St. Louis, State of Missouri. At all times relevant herein, she was an elected

member of the St. Louis Board of Education (hereinafter "Board"), serving as its

Exhibit
A

president.

2. Defendant, St. Louis Public Schools District (hereinafter "District"), is a public school district organized and existing under the laws of the State of Missouri and more specifically Chapter 162 R.S.Mo. located in the City of St. Louis, State of Missouri.

3. Defendant, Special Administrative Board (hereinafter "SAB"), is a three-member board appointed by the Governor, Mayor of the City of St. Louis, and President of the Board of Aldermen of the City of St. Louis to govern the District by reason of §162.1110 R.S.Mo. A board of education of a district organized under §§ 162.571 through 162.666 R.S.Mo. may sue and be sued in its name.

4. Defendants Rick Sullivan (hereinafter "Sullivan"), Melanie Adams (hereinafter "Adams"), and Richard K. Gaines (hereinafter "Gaines"), are and were at all times relevant herein the appointed members of the SAB.

5. Venue is proper in the City of St. Louis by reason of § 508.050 R.S.Mo. and § 508.010.4 R.S.Mo. as the place where Plaintiff was first injured by the wrongful acts of the Defendants alleged herein and as the county in which the municipal corporation is situated.

6. On or about July 11, 2006, Floyd Irons (hereinafter "Irons") was removed as the Vashon High School basketball coach and Athletic Director for the District. Ultimately, Irons was indicted and pled guilty to mortgage fraud in the United States District Court for the Eastern District of Missouri and was sentenced to a twelve-month prison term. Additionally, Vashon High School was stripped of three basketball state championships after an investigation confirmed that Irons had cheated by fielding ineligible players and engaging in other recruiting violations.

2

7.    ~~Irons' removal by the Board, to include O'Brien as its President, led to~~
protests outside O'Brien's home and the District hiring security for her. Ultimately,
O'Brien filed *ex parte* petitions for protective orders against Irons and Demetrius Johnson
(hereinafter "Johnson") because the protests outside her home caused her to be concerned
about her safety and the safety of her children.

8.    On or about September 19, 2006, Irons and Johnson filed a civil lawsuit
against O'Brien claiming defamation, malicious prosecution, and the intentional
infliction of emotional distress. This action is hereinafter referred to as the "First
Irons/Johnson Lawsuit." The suit alleged that at all times relevant to it, O'Brien was a
member of and president of the elected Board of the District. While this lawsuit was
ultimately amended to claim only defamation and malicious prosecution, it continued to
allege that at all times relevant, O'Brien was a member of the elected Board and was the
Board's president from April 2006 through April 2007.

9.    After the First Irons/Johnson Lawsuit was filed, Kenneth Brostron, legal
counsel for the elected Board, recommended that the Board defend O'Brien, with an
appropriate reservation of rights, because the petition spoke of Plaintiff's actions as a
Board member. A motion was passed by the Board to defend O'Brien during executive
session at a special meeting of the Board held on October 3, 2006. See Exhibit 1 attached
hereto and incorporated by reference herein.

10.    On or about October 24, 2006, correspondence was directed to Pleban &
Associates, LLC (hereinafter "Pleban & Associates") by the Board's then attorneys,
Lashly & Baer, P.C., regarding Pleban & Associates withdrawal in an unrelated case filed
against the Board and Creg Williams prior to the Board retaining Pleban & Associates to

3

represent O'Brien in the First Irons/Johnson Lawsuit due to a conflict of interest the Board refused to waive if Pleban & Associates were to represent O'Brien. Pleban & Associates withdrew from the unrelated case at the Board's request to represent O'Brien.

11.    Thereafter, on November 21, 2006, the Board by motion authorized the engagement of C. John Pleban of Pleban & Associates to represent O'Brien in the First Irons/Johnson Lawsuit due to a potential conflict of interest involving the District's law firm.

12.    With the Board's approval, Pleban & Associates undertook the defense of O'Brien in the First Irons/Johnson Lawsuit and provided legal services to O'Brien consistent with the Board's appointment. O'Brien's legal fees were fully paid by the Board through June 2007.

13.    In a special meeting of the Board on April 12, 2007, the Board reaffirmed the defense it was providing to O'Brien because of the allegations against O'Brien for her conduct as a Board member.

14.    Upon information and belief, the District, elected Board, and SAB have paid the costs and legal fees of defending all lawsuits against Board members, elected or appointed, when the lawsuit alleged actions against the Board member taken in the course and scope of his/her duties, with the exception of O'Brien.

15.    On or about June 15, 2007, the State declared the District unaccredited, and the SAB took control of the District. It was at that time that Sullivan, Adams, and Gaines were appointed to the SAB.

16.    From the time that the SAB was appointed, O'Brien has been a strong supporter of the SAB but an outspoken critic of Sullivan and his performance as Chief

4

Executive Officer of the SAB in public forums and to various elected officials of the City and State.

17.   At a special meeting of the SAB held on September 18, 2007, the SAB voted to terminate O'Brien's indemnity and legal defense in the First Irons/Johnson Lawsuit.

18.   In correspondence dated September 19, 2007, the SAB, without explanation, informed O'Brien's counsel that it would no longer defend or indemnify O'Brien in the First Irons/Johnson Lawsuit. A copy of this correspondence is attached hereto and incorporated by reference herein as Exhibit 2.

19.   In correspondence directed to Sullivan dated November 6, 2007, O'Brien challenged the decision of the SAB to deny her indemnification and defense in the First Irons/Johnson Lawsuit based upon acts taken in her official capacity as a member of the elected Board after her outspoken criticism of Sullivan as an effort to punish her for exercising her First Amendment rights and to chill other elected Board members from being critical of the District after the appointment of the SAB. This correspondence requested the legal authority by which the SAB rescinded the indemnification and defense of O'Brien by the elected Board, as well as any other instances in which the SAB rescinded the indemnification and defense of any other elected Board member for actions allegedly taken in their official capacity. A copy of this correspondence is attached hereto and incorporated by reference herein as Exhibit 3.

20.   In correspondence dated November 9, 2007, the SAB, through counsel, refused to provide the legal authority by which it had rescinded the duly enacted motion of the elected Board to defend O'Brien for acts allegedly taken in her official capacity.

5

However, the SAB admitted that other than O'Brien, it had not rescinded the defense and/or indemnification of any other elected Board member named as a defendant in a lawsuit since its appointment. A copy of this November 9, 2007 correspondence is attached hereto and incorporated by reference herein as Exhibit 4. As set forth above, O'Brien was and is an outspoken critic of Sullivan.

21.     According to the St. Louis Board of Education Bylaws, the Board may select and employ legal counsel at such times and in such manner as it deems appropriate. A copy of this bylaw is attached hereto and incorporated by reference herein as Exhibit 5. In the present case, the duly elected Board employed legal counsel to represent O'Brien as it deemed appropriate.

22.     Additionally, Board policy P4780 provides that employees who are assaulted in the performance of their official duties may be eligible for Board of Education legal advice and assistance. A copy of Board policy P4780 is attached hereto and incorporated by reference herein as Exhibit 6. Actions at issue in the First Irons/Johnson Lawsuit and Second Johnson/Irons Lawsuit discussed in more detail below (hereinafter collectively referred to as the "Irons/Johnson Lawsuits") were taken as a result of efforts by Irons and Johnson to place O'Brien in imminent fear of harm, constituting assaultive behavior.

23.     Board policy P4770 provides that the Board may defend employees against lawsuits filed against them individually for actions resulting from their employment duties. The policy applies even when an employee is named in his/her individual capacity. A copy of Board policy P4770 is attached hereto and incorporated by reference herein as Exhibit 7.

6

24.    Board policy P8232 provides that Board members may be reimbursed for actual, reasonable, and necessary expenses incurred in the performance of their official duties as Board members. A copy of Board policy P8232 is attached hereto and incorporated by reference herein as Exhibit 8. O'Brien has incurred actual, reasonable, and necessary expenses as a result of her official duties due to the Irons/Johnson Lawsuits as set forth herein.

25.    Since the SAB's September 18, 2007 meeting, it has failed and refused to provide O'Brien with a defense or indemnification with respect to any claims filed against her by Irons/Johnson for actions allegedly taken in the course and scope of her duties as an elected member of the Board, and more specifically its president.

26.    On or about November 18, 2008, Irons and Johnson voluntarily dismissed without prejudice the First Irons/Johnson Lawsuit they had filed against O'Brien, presumably because at the time Irons was unable to prosecute the case because incarcerated.

27.    On or about March 25, 2009, Irons and Johnson refiled a petition against O'Brien (hereinafter "Second Irons/Johnson Lawsuit"), once again alleging defamation and malicious prosecution and further alleging that O'Brien was a member of the Board at all times relevant to the petition and its President from April 2006 through April 2007. A copy of the March 25, 2009 petition is attached hereto and incorporated by reference herein as Exhibit 9.

28.    Through the SAB O'Brien once again requested that the District defend and indemnify her with respect to the Second Irons/Johnson Lawsuit filed against her.

29.    As of the date of the filing of this petition, Defendants have failed and

7

refused to defend or indemnify Plaintiff in the Second Irons/Johnson Lawsuit, which has been attached hereto as Exhibit 9.

30. Upon information and belief, O'Brien is the only member of the elected Board that the SAB has failed and refused to defend and/or indemnify when legal action has been taken against a Board member for actions allegedly taken in the course and scope of the Board member's official duties. The SAB has confirmed that O'Brien is the only elected Board member that it rescinded defense and/or indemnification after such defense/indemnification had been approved by the elected Board consistent with Board policy.

31. Upon information and belief, the District and/or the SAB maintain a policy or policies of insurance with respect to tort claims filed against it/them, and therefore, to the extent that the District and/or SAB may assert the defense of sovereign immunity with respect to any tort claims set forth below, the District/SAB has waived such defense under the provisions of §537.610 R.S.Mo. by maintaining such policy or policies of insurance.

## COUNT I – PETITION FOR DECLARATORY RELIEF

For Count I of her cause of action against all Defendants, Plaintiff O'Brien states as follows:

32. Plaintiff restates and incorporates by reference, as though fully set forth herein, the allegations set forth in paragraphs 1 through 31 of her petition.

33. A real, presently existing, substantial controversy admitting of specific relief exists between O'Brien and Defendants as to whether O'Brien must be defended and indemnified for the allegations set forth in the Second Irons/Johnson Lawuit and

8

whether she should be reimbursed for her legal fees and expenses incurred but not reimbursed by the District in the First Irons/Johnson Lawsuit.

34. O'Brien has a personal interest directly at issue in this Court's declaration of her rights to defense and indemnification by reason of the Irons/Johnson Lawsuits filed against her because of alleged acts taken by her in the course and scope of her duties as a member of the elected Board and more specifically as president of the Board.

35. The declaration sought herein presents a question appropriate and ready for judicial determination because O'Brien has been denied defense and indemnification by Defendants in the Second Irons/Johnson Lawsuit, and therefore, will suffer economic harm if this Court does not declare the rights of the parties as requested herein. Similarly, O'Brien has been denied reimbursement for her legal fees and expenses in the First Irons/Johnson Lawsuit since the appointment of the SAB, and therefore, has suffered economic harm as a result of the SAB's actions.

36. The relief requested herein, that Defendants be ordered to defend and indemnify O'Brien in the Second Irons/Johnson Lawsuit filed against her and be ordered to pay her unreimbursed expenses and attorneys' fees in defending the First Irons/Johnson Lawsuit will provide O'Brien and other similarly situated elected Board members with immediate and consequential relief if it is determined that elected Board members against whom civil claims are asserted because they acted in the course and scope of their duties are entitled to defense and indemnification by Defendants.

37. O'Brien has no adequate remedy at law without this Court's declaration of the parties rights and responsibilities as she has no other means to enforce her rights as an elected member of the Board and its former president.

9

WHEREFORE, Plaintiff prays for declaratory judgment by the Court that

Defendants must defend and indemnify her for the claims asserted against her in the Second Irons/Johnson Lawsuit and must pay her for all unreimbursed attorneys' fees and expenses incurred in defending the First Irons/Johnson Lawsuit; for prejudgment and post-judgment interest; for Plaintiff's reasonable costs and attorneys' fees in bringing this action; and for such other and further relief to be determined by the Court to be just and equitable.

## COUNT II -- 42 U.S.C. SECTION 1983
VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE SPEECH

For Count II of her cause of action against all Defendants, Plaintiff O'Brien states as follows:

38.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 37 of her petition.

39.     O'Brien's indemnification and defense in the Irons/Johnson Lawsuits was terminated by the Defendants, who have final policymaking authority for the District.

40.     O'Brien's speech, and more specifically, her expressions as a private citizen to other concerned citizens and/or elected officials of the City and State government in a reasonable manner of her criticism of Sullivan was a motivating factor and/or played a part in the Defendants' decision to rescind the indemnification and defense provided by the elected Board in the First Irons/Johnson Lawsuit and thereafter refusing to indemnify and defend O'Brien in the Second Irons/Johnson Lawsuit.

41.     O'Brien's speech regarding Sullivan as a member of the SAB constituted speech regarding a matter of public concern.

42.     O'Brien's constitutionally protected interest in free speech regarding

10

matters of public concern outweighs any interests Defendants might have in preventing

such speech, particularly in that the SAB's actions as set forth herein will have a chilling

effect on other District officials and employees' free speech rights.

43.     O'Brien's protected speech made at a reasonable time and in a reasonable

manner did not render the District's operations inefficient, and O'Brien's speech did not

disrupt District operations in any way.

44.     The actions complained of herein in rescinding O'Brien's defense and

indemnification in the First Irons/Johnson Lawsuit and in refusing to indemnify and

defend her in the Second Irons/Johnson Lawsuit due to her exercise of her constitutional

free speech rights qualify as adverse governmental actions authorized and approved by

the Defendants acting under color of state law.

45.     The actions of the Defendants as set forth herein taken under color of state

law violate O'Brien's rights secured by the Constitution of the United States, specifically

the First, Fifth and Fourteenth Amendments.

46.     As a direct and proximate result of the actions of the Defendants in

retaliation for O'Brien exercising her First Amendment right to free speech, O'Brien has

sustained damages that include but are not necessarily limited to, costs and attorneys'

fees, emotional pain and suffering, mental anguish, inconvenience, humiliation,

embarrassment, loss of enjoyment of life, stress and loss of reputation, as well as

additional damages.

47.     The conduct of Defendants as set forth herein was wanton, willful, and

showed a reckless indifference to O'Brien's constitutional rights as set forth above

making an award of punitive damages proper to deter these and other similarly situated

11

defendants from like conduct in the future.

WHEREFORE, Plaintiff O'Brien prays for the entry of judgment against Defendants, jointly and severally, for compensatory damages in a sum that is fair and reasonable in an amount that exceeds $ 25,000.00, the jurisdictional minimum of this court; for prejudgment and post-judgment interest; for the entry of judgment against the individual Defendants in their individual capacities, jointly and severally, for punitive damages in a sum that is fair and reasonable, sufficient to punish these Defendants and to deter others similarly situated from engaging in similar misconduct; for her costs herein expended, including but not limited to her reasonable costs and attorneys' fees; and for such other and further relief as may be appropriate under the circumstances.

## COUNT III – CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS COGNIZABLE UNDER 42 U.S.C. §1983

For Count III of her cause of action against Defendants Sullivan, Adams, and Gaines, Plaintiff O'Brien states as follows:

48. Plaintiff incorporates by reference as if fully set forth herein, paragraphs 1 through 47 of her petition.

49. Defendants, acting under color of state law, conspired together and amongst themselves and as a result reached a mutual understanding to rescind the defense and indemnification of O'Brien in the First Irons/Johnson Lawsuit and refuse to indemnify and defend her in the Second Irons/Johnson Lawsuit because of her constitutionally protected speech and/or to undertake a course of conduct to protect each other from the consequences of their wrongful acts and/or constitutional deprivations as officials of the District and in furtherance of this conspiracy violated O'Brien's civil rights. In furtherance of this conspiracy, the Defendants committed the following overt

12

acts.

a. Defendants rescinded O'Brien's defense and indemnification in the First Irons/Johnson Lawsuit and refused to provide defense and indemnification in the Second Irons/Johnson Lawsuit to punish her for exercising her First Amendment rights in a manner critical of Sullivan, even though the Irons/Johnson Lawsuits were/are based upon actions taken by O'Brien in the course and scope of her duties as an elected Board member. More importantly, these actions were taken by the SAB in an effort to chill criticism of it.

b. Upon information and belief, the SAB and/or its representatives have met with Irons and Johnson and/or their representatives to strategize against O'Brien rather than protecting and defending her interests as a member of the elected Board in an effort to oppress her for exercising her First Amendment rights.

50. Defendants shared the general conspiratorial objective which was to oppress O'Brien by depriving her of indemnification and defense in a legal action taken against her in her official capacity as an elected Board member because of her First Amendment activity set forth herein. Such conduct was engaged in by the SAB, which now has final policy-making authority over the District, and as a result, the SAB is effectively insulated from civil sanction, allowing the Defendants to feel free to engage in the misconduct as aforedescribed, without any fear of sanction or retribution.

51. Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up thereof and/or ignoring the course of conduct set forth herein so as to insulate themselves and others from liability for the

13

~~outrageous and unlawful acts of the Defendants as described herein, showing a tacit~~ understanding to carry out the prohibited conduct.

52.     As a direct and proximate result of the conspiracy amongst Defendants and in furtherance thereof, O'Brien's defense and indemnification in a lawsuit brought against her because of her Board duties was rescinded without explanation and the SAB refused to defend or indemnify her when the lawsuit was re-filed – all in retaliation for her exercising her First Amendment rights. As a result, the acts of the Defendants as set forth herein have deprived O'Brien of her constitutionally protected speech, due process, and equal protection rights secured by the First, Fifth and Fourteenth Amendments of the United States Constitution, protected by 42 U.S.C. §1983.

53.     As a direct and proximate result of the actions of the Defendants in retaliation for O'Brien exercising her First Amendment right to free speech, O'Brien has sustained damages that include but are not necessarily limited to attorneys' fees and other expenses that were previously paid by the District, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation, as well as other damages.

54.     The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to O'Brien's constitutional rights as set forth above making an award of punitive damages proper to deter these and other similarly situated defendants from like conduct in the future.

WHEREFORE, Plaintiff O'Brien prays for the entry of judgment against Defendants Sullivan, Adams, and Gaines, jointly and severally, for compensatory damages in a sum that is fair and reasonable in an amount that exceeds $ 25,000.00, the

14

jurisdictional minimum of this court; for prejudgment and post-judgment interest; for the entry of judgment against the individual Defendants in their individual capacities, jointly and severally, for punitive damages in a sum that is fair and reasonable, sufficient to punish these Defendants and to deter others similarly situated from engaging in similar misconduct; for her costs herein expended, including but not limited to her reasonable costs and attorneys' fees; and for such other and further relief as may be appropriate under the circumstances.

## COUNT IV
## PRIMA FACIE TORT

For Count IV of her cause of action against all Defendants, Plaintiff O'Brien states as follows:

55.     Plaintiff incorporates by reference as if fully set forth herein, paragraphs 1 through 54 of her petition.

56.     Defendants, due to their personal animosity towards O'Brien as a result of her vocal criticism of Sullivan, engaged in the intentional lawful act of refusing to defend and indemnify O'Brien in the Irons/Johnson Lawsuits.

57.     In refusing to indemnify and defend O'Brien in the Irons/Johnson Lawsuits, Defendants acted with the intent to injure O'Brien.

58.     O'Brien has been injured and damaged as a direct and proximate result of the intentional lawful act of Defendants as set forth herein because she has been forced to incur legal fees and expenses and has incurred additional damages. The intentional lawful act of these Defendants was not in the best interest of the District and/or the citizens of the City of St. Louis because citizens will not be willing to serve on the District's elected Board if they are not defended and indemnified when sued for their

15

official actions.

59. Additionally, as a direct and proximate result of Defendants' actions as set forth herein, O'Brien has suffered emotional pain and suffering, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

60. There was an absence of or insufficient justification for Defendants' action of denying O'Brien defense and indemnification in the Irons/Johnson Lawsuits.

61. The acts and conduct of Defendants, as described above were outrageous because of their evil motive and reckless indifference to O'Brien's rights, making an award of punitive damages appropriate under the circumstances.

WHEREFORE, Plaintiff O'Brien prays for the entry of judgment against Defendants, jointly and severally, for compensatory damages in a sum that is fair and reasonable in an amount that exceeds $ 25,000.00, the jurisdictional minimum of this court; for prejudgment and post-judgment interest; for the entry of judgment against the individual Defendants in their individual capacities, jointly and severally; for punitive damages in a sum that is fair and reasonable, sufficient to punish these Defendants and to deter others similarly situated from engaging in similar misconduct; for her costs herein expended, including but not limited to her reasonable costs and attorneys' fees; and for such other and further relief as may be appropriate under the circumstances.

16

Respectfully submitted,

**PLEBAN & PETRUSKA LAW, LLC**

by: _____

C. John Pleban, #24190
Lynette M. Petruska, #41212
2010 S. Big Bend Blvd.
St. Louis, MO 63117
Telephone:      (314) 645-6666
Facsimile:   (314) 645-7376

Attorneys for Plaintiff

17

# BOARD OF EDUCATION

## OF THE CITY OF ST. LOUIS

### OFFICIAL REPORT

**Executive Session**
**Special Meeting**

**St. Louis, MO, October 3, 2006**

### EXECUTIVE SESSION MINUTES

Upon passage of the Motion to go into closed session to discuss legal matters (Section 610.021(1)), Mr. Brostron gave a brief description of the lawsuit <u>Floyd Irons v. O'Brien</u>. Mr. Brostron asked for authorization to provide a defense to Ms. O'Brien, since the petition speaks about Ms. O'Brien's actions as a Board member.

The Board considered a motion by Ms. Jones, seconded by Mr. Downs, to provide a defense with an appropriate reservation of rights to Ms. O'Brien in the lawsuit, <u>Irons v. O'Brien</u>.

**AYE:** Ms. Downs, Mr. Jones, Mr. Purdy – 3.

**NAY:** Mr. Jackson - 1.

Motion passed.

Mr. Brostron discussed the lawsuit of <u>Basden v. St. Louis Board of Education</u> filed by six former employees who were RIF'd in July. The plaintiffs claim they are entitled to payment because they were twelve month contractual employees. Mr. Brostron asked for authorization to provide a defense to the Board and the individual Board members in this lawsuit.

The Board considered a motion by Mr. Downs, seconded by Ms. Jones, to provide a defense in the lawsuit, <u>Basden v. St. Louis Board of Education</u>.

EXHIBIT

*1*

AYE: Mr. Downs, Ms. Jones, Mr. Purdy – 3.

NAY: Mr. Jackson – 1.

Motion passed.

At 6:58 p.m., on motion of Ms. Jones, seconded by Mr. Downs, on the following roll call vote, the Board voted to move into open session.

AYE: Mr. Downs, Mr. Jackson, Ms. Jones, Mr. Purdy – 4.

Motion passed.

Attested:

_____

Dr. Flint Fowler, Secretary



*Special Administrative Board*

*Mr. Richard Sullivan*
*President / CEO*
*Ms. Melanie Adams*
*Vice President*
*Mr. Richard Gaines*
*Member*

September 19, 2007

Ms. Lynette M. Petruska
Pleban & Associates, L.L.C.
2010 S. Big Bend Boulevard
St. Louis, MO 63117

RE:    Irons, et al. v. O'Brien, et al.
       Cause No. 0622-CC06018

Dear Ms. Petruska:

At an executive session of the Special Administrative Board on Thursday, September 18, 2007,
with three Board Members present, the Board reviewed information on the above referenced
case.

After due consideration and deliberation of the information and advice from legal counsel, the
Board voted to terminate the District's indemnity and legal defense of Ms. O'Brien in this case.

Sincerely,

Rick Sullivan
CEO

xc: Ms. Veronica C. O'Brien

| **EXHIBIT** |
| :---: |
| $\partial$ |

*Pleban & Associates, L.L.C.*

*Attorneys at Law*

*Lynette M. Petruska*

November 6, 2007

Mr. Rick Sullivan
CEO of Special Administrative Board
St. Louis Public Schools
801 N. 11th Street
St. Louis, MO 63101

       Re:   Irons, et al. v. O'Brien, et al.
               Cause No. 0622-CC06018



Dear Mr. Sullivan:

      Veronica O'Brien has requested that this office pursue on her behalf the Special Administrative Board's September 19, 2007 decision to no longer indemnify or defend her in the above-referenced case. As I am sure you are aware, the elected Board originally authorized representation in this case because the petition alleges actions on the part of Ms. O'Brien in her official capacity as a member of the Board. This office was then appointed by the Board of Education to represent Ms. O'Brien because of a conflict of interest involving Lashly & Baer. This office continuously represented Ms. O'Brien's interests pursuant to the elected Board's authorization from November 2006 through your correspondence dated September 19, 2007.

      It is our understanding that while Ms. O'Brien has been a strong supporter of the Special Administrative Board, she has also been an outspoken critic of your performance since you were appointed to the SAB. As the indemnification and defense of Ms. O'Brien for actions taken as a member of the elected Board appears to fall squarely within the Board's policies and procedures, Ms. O'Brien believes that she has been denied the representation other Board members receive (and that she previously received) because of her public criticism of your performance, and therefore, is being punished for exercising her First Amendment rights. The Special Administrative Board's actions with respect to Ms. O'Brien create a chilling effect as to anyone in the District who might challenge the Special Administrative Board.

      We would appreciate a copy of the minutes of all meetings at which Ms. O'Brien's indemnification and defense were discussed and ultimately rescinded by the Special Administrative Board. Additionally, we would appreciate clarification as to the legal authority by which the Special Administrative Board took this action against Ms.

Mr. Rick Sullivan
November 6, 2007
Page 2 of 2

O'Brien after indemnification and defense was approved by a duly elected Board.
Additionally, we would appreciate information regarding any elected Board members
who have been treated similarly to Ms. O'Brien, meaning that the Special Administrative
Board has refused to defend and/or indemnify them with respect to any legal action taken
against them because of claims made against them in their official capacities as Board
members. Please consider this correspondence a Sunshine Law request for this
information.

We hope to resolve this matter expeditiously and amicably on Ms. O'Brien's
behalf, but if we are not able to do so, Ms. O'Brien has instructed this office pursue all
legal remedies available to her and to hold those responsible for this action liable in both
their official and personal capacities. If we do not hear otherwise from the Special
Administrative Board by November 13, 2007, we will assume that it refuses to produce
the documents requested and is not interested in the amicable resolution of this matter
and will proceed accordingly.

Sincerely,

Lynette M. Petruska

LMP/me

# LEWIS, RICE & FINGERSH, L.C.

ATTORNEYS AT LAW

ALLEN S. BOSTON
DIRECT (314) 444-7712

500 N. BROADWAY, SUITE 2000
ST. LOUIS, MISSOURI 63102-2147
WWW.LRF.COM
ABOSTON@LEWISRICE.COM

TEL (314) 444-7600
FAX (314) 612-7712

November 9, 2007

Ms. Lynette M. Petruska, Esq.
Pleban & Associates, L.L.C.
2010 South Big Bend Boulevard
St. Louis, MO 63117

> **Re:** **Irons, et al. v. O'Brien, et al.**
> **Cause No.**

Dear Ms. Petruska:

Mr. Sullivan has forwarded to me your letter of November 6, 2007. The Minutes you have requested were provided to Ms. O'Brien by my letter of October 31, 2007. I am, however, enclosing for you a second copy of those Minutes. Your other requests are not appropriate requests under the Sunshine Law, as I believe you know. Explanations as to why a decision was made by the Board does not fall within the Statute.

With regard to other actions that the SAB may have taken with regard to other Board Members, while you have not requested properly that information by asking for documentation on that subject, I can advise that no other Board Member has had their indemnification rescinded by the SAB.

This response will constitute a complete response to your letter of November 6, 2007. To the extent your client's request from two days earlier may mirror some of your requests in this letter, we will consider those requests to have been answered and will not fashion redundant responses at the cost of the District.

Very truly yours,

Allen S. Boston

ASB:kip

Enclosure

cc: Richard T. Sullivan (w/out encl.)

**EXHIBIT**
4

Nov 13 07 01:26a       Mark                                              5 i+863-3934          p.1

B9260

# ST. LOUIS BOARD OF EDUCATION BYLAWS

## BYLAWS OF THE BOARD

## DUTIES OF OFFICERS, MEMBERS, EMPLOYEES AND AGENTS

### Attorney

The board may select and employ legal counsel at such times and in such
manner as it deems appropriate. Legal counsel shall represent the board in
all litigation and legal proceedings in which the board is involved. Legal
counsel shall advise the board, the superintendent, and the superintendent's
staff on Board of Education legal matters. Legal counsel shall represent the
superintendent in employee and student disciplinary hearings and shall
perform such other duties of a legal nature as are assigned by the board and
the superintendent.

Bylaw Adopted: July 10, 1990

Revised:       February 9, 1999

EXHIBIT
5

P4780
ST. LOUIS BOARD OF EDUCATION POLICY
PERSONNEL
SECURITY OF PERSONNEL

Legal Assistance to Employees

Employees who are assaulted or otherwise physically injured in the performance of official duties may, in appropriate cases, be eligible for Board of Education legal advice or assistance. If a claim is made or a suit filed against an employee individually by a student or other person arising out of the employee's performance of official duties, board attorneys may defend such employee in accordance with policy number P4770 (Protection of Employees Against Liability Claims). All contact with board attorneys must be made with the approval of the superintendent, deputy superintendent, or the appropriate associate superintendent.

Policy adopted: June 12, 1990

Revised: December 8, 1998

[ Home ] [ Article 0 ] [ Article 1 ] [ Article 2 ] [ Article 3 ] [ Article 4 ] [ Article 5 ]
[ Article 6 ] [ Article 7 ] [ Article 8 ] [ Article 9 ] [ Updates ]

EXHIBIT
6

P4770

ST. LOUIS BOARD OF EDUCATION POLICY
PERSONNEL
SECURITY OF PERSONNEL
Protection of Employees Against Liability Claims
A. GENERAL CONSIDERATION

The board may defend its employees against lawsuits filed against them individually for personal injuries or property damage resulting from their employment duties with the Board of Education subject to the restrictions in paragraph C and its subparts and other board bylaws, policies or regulations. In such lawsuits, the board may also satisfy money judgments entered against its employees to the extent of $1,000,000 per occurrence, secondary to any insurance coverage which the employee may carry individually or through the employee's applicable bargaining unit.

This policy applies to employees named in their individual capacities as defendants in lawsuits. By adopting this policy, the Board of Education does not waive the defense of sovereign immunity to tort claims brought against the Board of Education (or the St. Louis School District) as a public entity or against its employees in their official capacities beyond the express waiver contained in Section 537.600, RSMo. Nothing herein shall be construed as a waiver under Section 537.610, RSMo., of the board's right to assert sovereign immunity as a defense to civil action.

This policy is not, nor is it intended to be construed as insurance coverage.

Protection of Employees Against Liability Claims (continued) P4770

EXHIBIT

7

B. ACTIVITIES COVERED

Subject to the restrictions in paragraph C and its subparts, the foregoing protection extends to activities within the scope of employment of board employees. The protection is not limited to incidents occurring on school grounds. It extends to incidents occurring on field trips and related school sponsored activities conducted off school property, including claims arising out of an employee's authorized use of his/her personal automobile in connection with such related school sponsored activities. Protection will be provided to authorized volunteer workers on the same terms as regular board employees.

C. RESTRICTIONS TO COVERAGE

The protection provided is subject to the following restrictions:

1. Defense of self or others - Protection may be provided where an employee inflicts injury upon another in the course of defending himself/herself or another from harm. The board may deny protection to an employee who is the aggressor in an altercation with another.

2. Complying With Board Rules - The board will deny protection to any employee who causes bodily injury or property damage as a direct result of the employee's violation of a board bylaw, policy or regulation, or of an administrative order or directive, whether verbal or written. A finding by the board that an employee has violated a board bylaw, policy or regulation or a verbal or written administrative order or directive will be deemed conclusive. No protection will be afforded to an employee for injuries caused by such employee while under the influence of intoxicants, narcotics or any controlled substance.

Protection of Employees Against Liability Claims (continued) P4770

3. Criminal Charges - No protection will be provided to an employee in connection with criminal charges against the employee. Such employee must bear his/her own defense costs, and pay any fine that is levied against such employee by a court.

4. Compliance With Board Regulation - The board may deny protection to an employee who fails or refuses to comply with the procedures set forth in paragraph D below.

D. PROCEDURE

The board employs an independent adjusting firm to process claims made against the board and board employees. If protection is provided under these bylaws, policies and regulations, the adjusting firm will investigate the claim and may attempt to settle the claim for whatever amount is deemed appropriate, subject to final approval by the board or the superintendent of schools or his representative when the amount of the settlement does not exceed $2,000.00 and by the Board of Education when it exceeds $2,000.00.

The employee shall give the board written notice of the fact that a claim is being made against him as soon as practicable. If a suit is brought against the employee, the employee shall immediately forward the summons or other papers to the board. The employee shall cooperate with the board and, at the board's request, assist in making settlements, in the conduct of suits, and the employee shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The employee shall not, except at his/her own cost, voluntarily make any payment, assume any obligation, or incur any expense other than for first aid of others at the time of accident.

Protection of Employees Against Liability Claims (continued) P4770

The Board of Education or the superintendent of schools shall be responsible for making decisions as to whether employees are covered under these regulations. The superintendent or his representative can authorize settlement not exceeding $2,000.00. Settlements in excess of $2,000.00 shall be approved by the Board of Education.

The board reserves the right to change the terms and limits of the protection provided at any time.

References

Legal: Sections 537.600 and 537.610, RSMo.

Policy adopted: June 12, 1990

Revised: December 8, 1998

[ Home ] [ Article 0 ] [ Article 1 ] [ Article 2 ] [ Article 3 ] [ Article 4 ] [ Article 5 ]
[ Article 6 ] [ Article 7 ] [ Article 8 ] [ Article 9 ] [ Updates ]

P1111.1.1a

Page 1 of 1

P8232

ST. LOUIS BOARD OF EDUCATION POLICY

INTERNAL BOARD POLICIES
MEMBERS
Remuneration and Reimbursement
Remuneration

No compensation shall be paid to members of the St. Louis Board of Education.
Reimbursement

Board members, on authorization and approval of the board may be reimbursed for actual, reasonable, and necessary expenses incurred in the performance, of official duties as board members.

Payment of an expense should be approved only when it has actually been incurred by the board member, is reasonable in amount, and is necessary to the board member's performance of his or her official duties. Expenses which do not directly relate to official school business or which have no direct benefit to the school system, including but not limited to entertainment expenses, should be borne by the individual and not the district.

In appropriate cases, the treasurer is authorized to advance monies to board members for anticipated expenses. The advance, which should be reasonable and the average market rate for motel, food, registration and transportation expenses, shall not be greater than the anticipated expenses. Following the trip or other activity, the board member shall promptly return all monies not needed and shall promptly certify and file the necessary expense reports.

Appropriate forms and receipts must be submitted to the full board for review and approval at a scheduled planning, business, or special board meeting. Upon the board's approval, the president of the board will authorize reimbursement by means of his or her signature on the appropriate forms.

References

Legal: Section 162.581 RSMo.

Policy adopted: July 10, 1990
Revised: February 9, 1999
Revised: February 22, 2000

[ Home ] [ Article 0 ] [ Article 1 ] [ Article 2 ] [ Article 3 ] [ Article 4 ] [ Article 5 ]
[ Article 6 ] [ Article 7 ] [ Article 8 ] [ Article 9 ] [ Updates ]



EXHIBIT
8

MISSOURI CIRCUIT COURT
TWENTY-SECOND JUDICIAL CIRCUIT
(City of St. Louis)

FLOYD IRONS, and )
DEMETRIOUS JOHNSON, )
)
Plaintiffs, )
)
vs. ) Case No. *0982-CC01195*
)
VERONICA O'BRIEN, ) Division No. |
)
Serve at: )
6115 Lindell Boulevard )
St. Louis, MO 63112 )
)
Defendant )

## PETITION FOR DAMAGES

### Count I

### Defamation

COME NOW Plaintiffs Floyd Irons and Demetrious Johnson, by and through counsel,

and for Count I of their Petition for Damages against Defendant Veronica O'Brien, state and

allege as follows:

1.    Plaintiff Floyd Irons (hereinafter "Irons") is a resident of St. Louis County,

Missouri.

2.    Plaintiff Demetrious Johnson (hereinafter "Johnson") is a resident of St. Louis

County, Missouri.

3.    Defendant Veronica O'Brien (hereinafter "O'Brien") is a resident of the City of

St. Louis, Missouri. At all times relevant to this action, Defendant O'Brien has been a member

of the Board of Education of the St. Louis Public School District. From April 2006 to April



EXHIBIT
9

2007, Defendant O'Brien served as the President of the Board of Education.

4. Venue in this Court is proper pursuant to Mo. Rev. Stat. § 508.010(2) and (6).

5. Plaintiff Irons was employed as a teacher, coach, and administrator at Vashon High School from 1971 to approximately June 2005. From 1974 to July 2006, Plaintiff Irons was the Varsity Basketball Coach at Vashon High School. From July 2005 to approximately July 11, 2006, Plaintiff Irons also held the position of Athletic Director of the St. Louis Public School District.

6. From 1995 to 2006, Plaintiff Johnson was the host of a radio talk show on KATZ, 1600 AM Radio, St. Louis, Missouri, and Plaintiff Johnson has been active in sports and community programs and affairs in the St. Louis, Missouri, metropolitan area.

7. In November 2005, Defendant O'Brien accused Plaintiff Johnson of harassment intended to frighten or disturb Defendant O'Brien. On November 13, 2005, Defendant O'Brien filed a police report with the St. Louis Police Department that contained this allegation, and sought that criminal charges be brought against Plaintiff Johnson for this alleged misconduct. On information and belief, the St. Louis Police Department found that Defendant O'Brien's allegations lacked merit, but referred the matter to the Prosecuting Attorney, who refused to bring criminal charges against Plaintiff Johnson.

8. Prior to Defendant O'Brien filing a report with the St. Louis Police Department, in one or more of Plaintiff Johnson's radio talk shows, Plaintiff Johnson exercised his First Amendment rights and challenged some of Defendant O'Brien's decisions in her capacity as a member of the Board of Education regarding how certain St. Louis Public School programs and matters had been addressed and handled by Defendant O'Brien. At no time during these

2

discussions did Plaintiff Johnson threaten Defendant O'Brien or her family or make any statements that were harassing in nature or were intended to frighten or disturb a reasonable person.

9. On or about March 28, 2006, Defendant O'Brien sent a complaint by e-mail to the Federal Communications Commission against Plaintiff Johnson and Clear Channel, the carrier of Plaintiff Johnson's radio talk show. In her complaint, Defendant O'Brien falsely referred to Plaintiff Johnson's radio talk show as a "a local hate show" and made other false statements about Plaintiff Johnson, including the following:

a) that "the police attempted to bring Mr. Johnson up on charges;" and

b) that Plaintiff Johnson and Clear Channel "have repeatedly inflicted defamation of character and character assassination against not only myself but my family."

10. At no time did the St. Louis Police Department attempt to bring charges against Plaintiff Johnson, and at no time did Plaintiff Johnson defame Defendant O'Brien or her family.

11. Defendant O'Brien's characterization of Plaintiff Johnson's radio talk show as "a local hate show" was not only a false statement, but it harmed Plaintiff Johnson's reputation and thereby defamed Plaintiff Johnson.

12. There was no factual basis for the above statements, and Defendant O'Brien knew that the statements were false or acted with reckless disregard for whether the statements were true or false at a time when Defendant O'Brien had serious doubt as to whether the statements were true.

13. In early August 2006, Defendant O'Brien informed the St. Louis Post-Dispatch

3

~that she was going to request that the United States Attorney investigate the claim that Plaintiff~ Irons allegedly assaulted a fifteen-year-old Vashon High School student in February 2000. This information was published by the St. Louis Post-Dispatch on August 8, 2006.

14.    In 2000, any claims or charges against Plaintiff Irons regarding an incident with the Vashon High School student were dismissed by the St. Louis County Family Court. The evidence showed that the student had begun an altercation with an employee of the St. Louis Public Schools and was being physically aggressive; that Plaintiff Irons sought to intervene with the aggressive student; that the student pushed Plaintiff Irons and attempted to tackle Plaintiff Irons to bring Plaintiff Irons to the floor; and that Plaintiff Irons used appropriate and proper force to physically restrain the student. Immediately after this incident, the student was charged with assault and was sentenced to serve more than two weeks in juvenile detention.

15.    The statements made by Defendant O'Brien relating to an alleged assault of a student by Plaintiff Irons were false and harmed the reputation of Plaintiff Irons. Accordingly, Defendant O'Brien's statements defamed Plaintiff Irons.

16.    The actions taken by Defendant O'Brien with regard to an incident involving Plaintiff Irons that was more than six years old and that had been dismissed by the state courts were intentional and malicious.

17.    In the St. Louis Post-Dispatch article dated August 8, 2006, Defendant O'Brien is reported as stating that Plaintiffs Irons and Johnson posed a threat to her family.

18.    On August 25, 2006, on radio station 920 AM, Defendant O'Brien stated that she had a video that showed Plaintiff Irons on her front porch and that he was looking into her window.

4

19. Plaintiff Irons has never been on Defendant O'Brien's front porch and has never engaged in the conduct falsely alleged by Defendant O'Brien.

20. In a St. Louis Post-Dispatch article dated March 7, 2007, Defendant O'Brien is quoted as stating that plaintiff Irons "should not be around children, he should not be placed in a school. Period." Defendant O'Brien's statements falsely implied that Plaintiff Irons had engaged in inappropriate conduct toward children and thereby damaged his reputation

21. One or more of the above false statements made by Defendant O'Brien alleged professional and other improprieties by Plaintiff Irons or imputed that Plaintiff Irons had a want of integrity, engaged in misconduct, or had a lack of knowledge, skill, capacity, or fitness to perform his professional duties as a public school teacher, coach, and administrator. Accordingly, one or more of Defendant O'Brien's statements regarding Plaintiff Irons constitute defamation of Plaintiff Irons.

22. One or more of the above false statements made by Defendant O'Brien maligned Plaintiff Irons' character and reputation. Accordingly, one or more of Defendant O'Brien's statements regarding Plaintiff Irons constitute defamation of Plaintiff Irons.

23. One or more of the above false statements made by Defendant O'Brien alleged professional or other improprieties by Plaintiff Johnson or imputed that Plaintiff Johnson had a want of integrity, engaged in misconduct, or had a lack of knowledge, skill, capacity, or fitness to perform his professional duties as the host of a radio talk show and fitness to be active and responsible in sports and community affairs. Accordingly, one or more of Defendant O'Brien's statements regarding Plaintiff Johnson constitute defamation of Plaintiff Johnson.

24. One or more of the above false statements made by Defendant O'Brien maligned

5

Plaintiff Johnson's character and reputation. Accordingly, one or more of Defendant O'Brien's statements regarding Plaintiff Johnson constitute defamation of Plaintiff Johnson.

25.   Defendant O'Brien was at fault in making defamatory statements about Plaintiff Irons and Plaintiff Johnson.

26.   Defendant O'Brien's false and defamatory statements about Plaintiff Irons and Plaintiff Johnson were communicated to the public in the St. Louis, Missouri, metropolitan area through the courts, the press, and the radio and television media.

27.   Defendant O'Brien had no privilege or qualified privilege to make the aforesaid false statements about Plaintiff Irons or Plaintiff Johnson, and Defendant O'Brien made the aforesaid statements with malice in that she knew that the statements were false or acted with reckless disregard for whether the statements were true or false at a time when Defendant O'Brien had serious doubt as to whether the statements were true.

28.   Defendant O'Brien's false statements about Plaintiff Irons and Plaintiff Johnson tended to expose Plaintiffs to a lack of public confidence and deprived Plaintiffs of social and professional standing and association in their communities and in the St. Louis metropolitan area.

29.   As a result of Defendant O'Brien's false and defamatory statements about Plaintiff Irons and Plaintiff Johnson, Plaintiffs' reputations were damaged and continue to be damaged.

30.   As a result of Defendant O'Brien's false and defamatory statements about Plaintiff Irons and Plaintiff Johnson, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and mental anguish.

31.   Defendant O'Brien's false statements about Plaintiff Irons and Paintiff Johnson

6

were outrageous because of Defendant O'Brien's evil motive or reckless indifference to

Plaintiffs' rights not to have false statements made about them and communicated to others.

Accordingly, an award of punitive damages against Defendant O'Brien is warranted.

WHEREFORE, Plaintiffs Floyd Irons and Demetrious Johnson pray that the Court, after

trial by jury, enter judgment in their favor and against Defendant O'Brien in an amount in excess

of $25,000, for damages to Plaintiffs' reputations; for emotional distress, humiliation,

embarrassment, and mental anguish; for punitive damages; for costs of litigation; and for such

further relief as the Court deems just and proper.

## Count II

### Malicious Prosecution

COME NOW Plaintiffs Floyd Irons and Demetrious Johnson, by and through counsel,

and for Count II of their Petition for Damages against Defendant Veronica O'Brien, state and

allege as follows:

32. Plaintiffs reallege and incorporate by reference paragraphs 1 through 31 of Count

I, as if fully set forth herein.

33. On or about July 28, 2006, Defendant O'Brien filed four separate petitions for

Orders of Protection against Plaintiff Irons and Plaintiff Johnson in the Circuit Court of the City

of St. Louis, Missouri. The petitions contained numerous false statements regarding Plaintiff

Irons and Plaintiff Johnson, including allegations that Plaintiffs had stalked her and her minor

child, that Plaintiffs had made threats to harm her and her family, that Plaintiffs had driven their

car at a high rate of speed at Defendant O'Brien, as if trying to hit and injure her, and that

Defendant O'Brien was in fear of being harmed or killed by Plaintiffs.

7

34. The Circuit Court of the City of St. Louis refused to enter an Order of Protection for Defendant O'Brien on July 28, 2006, and set the matter for hearing on August 11, 2006.

35. On August 11, 2006, a hearing was held before the Honorable Michael Stelzer, Circuit Court of the City of St. Louis, Division 14, on Defendant O'Brien's petitions for Orders of Protection.

36. The evidence presented by Plaintiffs at the hearing demonstrated that at no time had either Plaintiff Irons or Plaintiff Johnson ever stalked Defendant O'Brien or made any threats to physically harm, injure, or kill Defendant O'Brien or any member of her family.

37. Immediately following presentation of the all of the evidence at the hearing, the Honorable Michael Stelzer denied each and every petition that Defendant O'Brien had filed for Orders of Protection against Plaintiffs.

38. Defendant O'Brien's allegations against Plaintiffs had no factual basis, and Defendant O'Brien failed to establish any facts showing that Plaintiffs had stalked her and/or made physical threats against her or her family.

39. All of the petitions seeking Orders of Protection against Plaintiffs that were instigated and filed by Defendant O'Brien terminated in favor of Plaintiffs Irons and Johnson.

40. Defendant O'Brien lacked probable cause to bring or pursue any petition for an Order of Protection against Plaintiffs, in that under the circumstances, an ordinarily careful person after having made a reasonable inquiry would not have believed the facts alleged and would not have believed that the judicial proceeding was valid.

41. Defendant O'Brien's petitions for Orders of Protection filed against Plaintiffs were frivolous and malicious, and Defendant O'Brien's pursuit of these frivolous claims

8

demonstrates malice towards Plaintiffs by Defendant O'Brien.

42. As a result of Defendant O'Brien's malicious prosecution of Plaintiffs, Plaintiffs have incurred attorneys' fees and costs of litigation in defending the action brought against them by Defendant O'Brien.

43. As a result of Defendant O'Brien's malicious prosecution of Plaintiffs, Plaintiffs have suffered emotional distress, humiliation, embarrassment, and mental anguish.

44. Defendant O'Brien's malicious prosecution of Plaintiffs was outrageous because of Defendant O'Brien's evil motive or reckless indifference to Plaintiffs' rights to not have petitions for Orders of Protection filed against them, and Defendant O'Brien's conduct in so doing warrants an award of punitive damages.

WHEREFORE, Plaintiffs Floyd Irons and Demetrious Johnson pray that the Court, after trial by jury, enter judgment in their favor and against Defendant O'Brien in an amount in excess of $25,000, for emotional distress, humiliation, embarrassment, and mental anguish; for punitive damages; for attorneys' fees and costs of litigation; and for such further relief as the Court deems just and proper.

DOBSON, GOLDBERG, MORELAND & BERNS

By: _____

Jerome J. Dobson, #32099
Jonathan C. Berns, #44474
Gregory A. Rich, #45825
Michelle Dye Neumann, #54127
906 Olive Street, Suite 900
St. Louis, MO 63101
Tel: (314) 621-8363
Fax: (314) 621-8366

Attorneys for Plaintiffs

9